T.C. Summary Opinion 2018-57


UNITED STATES TAX COURT


MOHAMED A. KAVIRO, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 26634-16S, 6266-17S.[1]          Filed December 6, 2018.


Mohamed A. Kaviro, pro se.

<u>Janet F. Appel</u> and <u>Aaron M. Greenberg</u>, for respondent.


SUMMARY OPINION

GUY, <u>Special Trial Judge</u>:  These cases were heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

---

[1]These cases were consolidated for purposes of trial, briefing, and opinion.

petitions were filed.[2]  Pursuant to section 7463(b), the decisions to be entered are not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent issued separate notices of deficiency to petitioner determining Federal income tax deficiencies of $7,604 and $9,433 for the taxable years 2014 and 2015 (years in issue), respectively.  Petitioner filed timely petitions for redetermination with the Court.  When the petitions were filed, he resided in Maine.

The issues for decision for the taxable year 2014 are whether petitioner (1) failed to report wages of $899 and gambling income of $1,600, (2) earned self-employment income of $3,500, (3) is eligible for head of household filing status, (4) is entitled to dependency exemption deductions for three children, (5) is entitled to child tax credits, and (6) is entitled to the earned income credit (EIC).

The issues for decision for the taxable year 2015 are whether petitioner (1) failed to report gambling income of $3,710, (2) is eligible for head of

_____

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended and in effect for the taxable years 2014 and 2015, and all Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

household filing status, (3) is entitled to dependency exemption deductions for three children, (4) is entitled to child tax credits, and (5) is entitled to the EIC.

Background[3]

## I. Petitioner's Children

Petitioner first met Abdeia Hassan in Texas around 2006. While it is unclear whether petitioner and Ms. Hassan ever lived together in Texas, they eventually moved to Maine and lived together there for several years beginning in 2009. During the years in issue, however, petitioner and Ms. Hassan lived in separate four-bedroom apartments in the same building.

Petitioner and Ms. Hassan had six children: S.M.A. born in 2006, twins Ha. M.A. and Hu. M.A. born in 2008, U.M.A. born in 2009, M.M.A. born in 2011, and Y.A. born in 2013.[4] Petitioner's three oldest children resided with him during the years in issue. Although the monthly rent on petitioner's apartment was set at approximately $1,600 to $1,700, he actually paid rent of approximately $300 per month, and the balance was subsidized under a Federal rental assistance program.

---

[3]Some of the facts have been stipulated.

[4]For privacy reasons, it is the Court's policy to refer to minors by their initials. See Rule 27(a)(3).

Petitioner's children received public assistance, including benefits from the Supplemental Nutrition Assistance Program (SNAP) and Medicaid.

II.  Petitioner's Tax Returns

Petitioner and Ms. Hassan filed Federal income tax returns for the taxable years 2008 and 2010-2013, claiming married filing jointly status.  For the taxable year 2009 petitioner filed a separate tax return and claimed head of household filing status.

Petitioner filed Federal income tax returns for 2014 and 2015 reporting wages of $10,734 and $16,975, respectively.  He also reported self-employment income of $3,500 for the taxable year 2014.  In addition to the wages that petitioner reported for the years in issue, he earned wages of $899 and collected gambling winnings of $1,600 in 2014 and collected gambling winnings of $3,710 in 2015.

Discussion

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Deductions and credits are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction or credit claimed.  Rule 142(a); Deputy v.

du Pont, 308 U.S. 488, 493 (1940); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Petitioner does not contend that the burden of proof should shift to respondent in accordance with the provisions of section 7491(a)(1), and there is no justification on this record for doing so.

I. Unreported Income

Section 61(a) provides that "gross income means all income from whatever source derived". Respondent determined that petitioner failed to report items of income (wages of $899 and gambling income of $1,600 for 2014 and gambling income of $3,710 for 2015) as reported to respondent by third-party payors on Form W-2, Wage and Tax Statement, and Forms W-2G, Certain Gambling Winnings.

Section 6201(d) provides that the Commissioner in certain circumstances cannot rely on information returns alone to establish unreported income but "shall have the burden of producing reasonable and probative information" in addition thereto. This provision applies only where the taxpayer "asserts a reasonable dispute with respect to any item of income reported on an information return" and only if "the taxpayer has fully cooperated with the Secretary". Id.

There is no indication that petitioner cooperated with respondent at any stage of these cases. Moreover, petitioner offered no testimony or other evidence

suggesting that he did not receive the items of income in question. On this record, we sustain respondent's determinations regarding the items of unreported income.

## II. Self-Employment Income

Respondent determined that petitioner did not earn self-employment income of $3,500 as reported on his tax return for 2014. Respondent's determination that petitioner did not earn self-employment income is related to the EIC (discussed in greater detail below)--a credit which is computed as a percentage of the taxpayer's "earned income". Sec. 32(a)(1).

Petitioner offered no testimony or business records in an effort to substantiate the self-employment income, and therefore respondent's determination is sustained.

## III. Filing Status

Section 1(b) provides a special tax rate for an individual who qualifies for head of household filing status. Section 2(b)(1) generally defines a head of household as an individual taxpayer who: (1) is unmarried as of the close of the taxable year and is not a surviving spouse; and (2) maintains as his home a household that constitutes for more than one-half of the taxable year the principal place of abode, as a member of such household, of (a) a qualifying child of the individual (as defined in section 152(c), determined without regard to section

152(e)), or (b) any other person who is a dependent of the taxpayer, if the taxpayer is entitled to a deduction for the taxable year for such person under section 151. See Rowe v. Commissioner, 128 T.C. 13, 16-17 (2007).

Section 1.2-2(c)(1), Income Tax Regs., provides that a taxpayer is considered to have maintained a household if he and a qualifying child actually occupied the household for the entire taxable year. Section 1.2-2(d), Income Tax Regs., further provides that a taxpayer is considered to have maintained a household only if he paid more than one-half the costs thereof for the taxable year. The costs of maintaining a household are the expenses incurred for the mutual benefit of the occupants, including property taxes, mortgage interest, rent, utility charges, upkeep and repairs, property insurance, and food consumed on the premises. Id.

Respondent determined that petitioner did not qualify for head of household filing status during the years in issue (and assigned him married filing separate status) on the alternative grounds that he had entered into a common law marriage with Ms. Hassan and that he failed to show that he paid more than one-half of the costs of maintaining a household that was the principal place of abode of a qualifying child.

A.  Common Law Marriage

State law determines the marital status of taxpayers for purposes of the Federal tax laws.  Von Tersch v. Commissioner, 47 T.C. 415, 419 (1967).  In general, whether a taxpayer is married for purposes of the Federal income tax is determined at the close of each tax year.  Sec. 7703(a)(1).

Although the State of Texas recognizes common law marriages, see Tex. Fam. Code Ann. sec. 2.401(a) (West 2006), there is no persuasive evidence in the record to support the proposition that the relationship between petitioner and Ms. Hassan was a legal and valid common law marriage at anytime relevant to these proceedings.  In short, while petitioner and Ms. Hassan once lived in Texas, there is no evidence that they agreed to be married or that they ever lived together there.  Petitioner testified credibly that he never believed he was married to Ms. Hassan and that he did not understand the implications arising from filing joint Federal income tax returns with her.

Moreover, petitioner resided in Maine throughout the years in issue. Common law marriages are not recognized as valid under the laws of Maine. Pierce v. Sec'y of U.S. Dep't of Health, Educ. & Welfare, 254 A.2d 46 (Me. 1969).  In any event he did not cohabit with Ms. Hassan during the years in issue, nor is there any indication that he represented to others that he was married to her.

On this record, we conclude that petitioner was not married during the years in issue.

### B. Household Support

As discussed in detail below, we conclude that petitioner's three oldest children were his qualifying children within the meaning of section 152(c) during the years in issue. We nevertheless agree with respondent that petitioner failed to establish that he provided over one-half of the cost of maintaining the apartment in which he and the children resided. See sec. 1.2-2(d), Income Tax Regs. As an initial matter, petitioner failed to establish the total cost of maintaining the apartment. The record reflects that petitioner's rent was heavily subsidized, and there is no evidence of his actual contribution to other household expenses such as utilities and food consumed on the premises. See, e.g., Huynh v. Commissioner, T.C. Memo. 2002-237. Consequently, respondent's determination that petitioner is not eligible for head of household filing status is sustained.

## IV. Dependency Exemption Deductions

Section 151(c) provides that a taxpayer generally is allowed a deduction for the applicable exemption amount for each individual who is a dependent. Section 152(a) defines the term "dependent" in relevant part to include a "qualifying child".

Section 152(c) generally defines a "qualifying child" as an individual who (1) bears a specified relationship to the taxpayer (e.g., a child of the taxpayer), (2) has the same principal place of abode as the taxpayer for more than one-half of such taxable year, (3) meets certain age requirements (e.g., has not attained the age of 19), (4) has not provided over one-half of such individual's own support for the taxable year at issue, and (5) has not filed a joint return for that year. Sec. 152(c)(1).

As previously mentioned, petitioner claimed dependency exemption deductions for his three oldest children. There is no dispute that the children satisfied the relationship and age requirements of section 152(c)(1)(A) and (C). Likewise, none of the children filed a joint tax return during the years in issue. See sec. 152(c)(1)(E). Petitioner testified, and apartment rental records and medical records indicate, that the children lived with petitioner throughout the taxable years in issue. See sec. 152(c)(1)(B).

The question that remains is whether any of the children provided over one-half of his or her own support within the meaning of section 152(c)(1)(D). In addressing this issue, a taxpayer must establish the total cost of monetary "support" expended on behalf of a claimed dependent from all sources for the relevant year. Sec. 1.152-1(a)(2)(i), Income Tax Regs. The term "support"

includes items such as "food, shelter, clothing, medical and dental care, education, and the like." Id. To determine whether an individual provided more than one-half of the support for himself or herself, the amount of support provided by the individual is compared to the individual's total amount of support. Id. subdiv. (ii).

Petitioner did not testify or provide other evidence that would establish the total amount of support expended on behalf of any of the children in question. He did state, however, that the children received various forms of public assistance including SNAP payments and healthcare services through Medicaid. As previously mentioned, the record also shows that petitioner's rent was heavily subsidized. Considering all the facts and circumstances, the Court finds that the children, all under the age of 10 during the years in issue, did not provide over one-half of the total amount of support that each received during the years in issue. See, e.g., Pavia v. Commissioner, T.C. Memo. 2008-270. Accordingly, petitioner is entitled under section 151 to dependency exemption deductions for the three children for the years in issue.

## V. Child Tax Credit

Section 24(a) and (c)(1) provides that a taxpayer is entitled to a child tax credit with respect to "each qualifying child", as defined in section 152(c), who has not attained age 17 and for whom the taxpayer is allowed a deduction under section 151. Section 24(d) provides that a portion of the child tax credit (commonly referred to as the additional child tax credit) may be refundable.

As discussed above, the children in question were petitioner's "qualifying children" for purposes of section 152(c) and satisfy the age limitation under section 24. Therefore, petitioner is entitled to child tax credits for the years in issue.

## VI. Earned Income Credit

Section 32(a)(1) allows an eligible individual an EIC against income tax in an amount equal to the credit percentage of so much of the individual's earned income for the taxable year as does not exceed the earned income amount. The term "earned income" is defined in section 32(c)(2)(A) and includes wages and net earnings from self-employment. For taxable years beginning after 2008 and before 2018, the credit percentage in the case of a taxpayer with three or more qualifying children is 45%. Sec. 32(b)(3)(A). A taxpayer claiming the EIC must

establish that he had earned income and the amount of that income. <u>See, e.g.,</u> <u>Blore v. Commissioner</u>, T.C. Memo. 2000-326.

Section 32(c)(1)(A)(i) defines an "eligible individual" in relevant part as an individual who has a qualifying child for the taxable year. The term "qualifying child" is defined in section 32(c)(3)(A) to mean a qualifying child of the taxpayer (as defined in section 152(c), determined without regard to paragraph (1)(D) thereof and section 152(e)).

On this record, we conclude that petitioner is an eligible individual within the meaning of section 32(c)(1)(A)(i). In particular, petitioner's three children are qualifying children under section 152(c) and his wages (as opposed to the incorrectly reported self-employment income) constitute earned income. Accordingly, petitioner is entitled to earned income credits for the years in issue based on the wages that he earned.

To reflect the foregoing,

<u>Decisions will be entered</u>

<u>under Rule 155</u>.